916 So.2d 12 (2005)
KENDALL LAKES TOWNHOMES DEVELOPERS, INC., Appellant,
v.
AGRICULTURAL EXCESS AND SURPLUS LINES INSURANCE COMPANY, n/k/a Great American E & S Insurance Company, a foreign corporation, Appellee.
No. 3D04-3094.
District Court of Appeal of Florida, Third District.
October 5, 2005.
Rehearing Denied December 29, 2005.
*13 Gonzalo R. Dorta; and Billbrough and Marks and Geoffrey B. Marks, Miami, for appellant.
Heidi M. Roth, Coral Gables, for appellee.
Before LEVY, GERSTEN, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
Kendall Lakes Townhomes Developers, Inc. ("insured") appeals from a final judgment confirming the appraisal award. We reverse and remand for further proceedings consistent with this opinion.
The insured is the owner of a townhouse complex consisting of thirteen buildings. Agricultural Excess and Surplus Lines Insurance Company, n/k/a Great American E & S Insurance Company ("insurance carrier") issued a policy insuring nine of the thirteen buildings against physical loss caused by windstorm, with a per building deductible of $7,500. The policy contains the following appraisal provision:
2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by judge of a court having jurisdiction. The appraiser will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
The insured filed a claim asserting that, as a result of Hurricane Irene, several units sustained interior damage due to water seepage. The insured also claimed that the wind from Hurricane Irene blew clay tiles off of the roofs and cracked or loosened other tiles which remained on the roofs.
*14 In response to the claim, the insurance carrier hired an adjuster to inspect the property and to issue a report regarding the damage claimed by the insured. This report states that none of the units had breaks in either the roof or skylight area, and that the damage to the interior walls was caused by "wind-blown water seepage," which is not covered by the policy because there was no break in the covered structure. The report also provides that two of the buildings had "a few tiles blown off of the roof," and that these missing tiles are covered under the policy, but that the cost to replace these few missing tiles is less than the policy's windstorm deductibles. Consistent with its adjuster's report, the insurance carrier denied the claim because the covered damage fell below the windstorm policy's deductibles.
The parties agreed that the insurance policy provided coverage for windstorm damage and did not dispute the meaning of the policy. The parties, however, disagreed as to whether windstorm caused all of the claimed damage or just part of it, and also disagreed as to the cost to repair the claimed loss.
The insured demanded appraisal pursuant to the policy, and each party selected its own appraiser. The insured's appraiser estimated the covered loss at approximately $716,000. On the other hand, the insurance carrier's appraiser estimated that the covered damage to all nine buildings was less than $1,000, and therefore, the loss fell below the policy's deductibles.
Based on the conflicts in the appraisals and the inability of the parties to agree on an umpire, the insurance carrier filed a Petition for Selection of Umpire. The trial court entered an order appointing an umpire, which provided, in part, as follows:
That petitioner's Motion to Determine Scope of Appraisal shall be and the same is herein granted to the extent that the appraisers shall derive at an amount of the total loss, and shall further breakdown the amount of the loss by virtue of excluded causes. The Court shall be the ultimate finder of fact on the issue of whether the loss, in whole or part, was caused by a covered cause.

(emphasis added).
After reviewing the two appraisal reports and conducting a hearing, the umpire entered the following award:
Following careful and thorough consideration of all documents, photographs, and testimony presented, as well as a review of relevant case law, this Umpire has determined that the insured did not carry the burden of proof to establish insurance coverage. Moreover, the presentation of circumstantial evidence by the insured was not sufficient to establish proximate cause.
Therefore, the loss to property is not covered under the subject insurance policy.
The carrier's appraiser also signed the award, acknowledging that he agreed with the award.[1]
The insurance carrier moved to have the appraisal award confirmed, and the insured filed its objection and moved to set aside the appraisal award. The trial court entered a final judgment confirming the appraisal award. This appeal followed.
The insured has raised numerous arguments in support of its contention that the trial court erred by affirming the appraisal *15 award, but we address only two of the arguments. First, the insured argues that pursuant to Johnson v. Nationwide Mutual Insurance Co., 828 So.2d 1021 (Fla.2002), causation of the damage is a coverage issue reserved for the trial court, not the appraisal panel. We disagree.
In Johnson, the Florida Supreme Court reviewed two cases that were directly in conflict, Nationwide Mutual Insurance Co. v. Johnson, 774 So.2d 779 (Fla. 2d DCA 2000), and Gonzalez v. State Farm Fire & Casualty Co., 805 So.2d 814 (Fla. 3d DCA 2000). In Nationwide Mutual, the insurer argued that the damage was as a result of an excluded cause, earth movement, whereas Johnson argued that the damage was as a result of a covered cause, a sinkhole. The Second District held that "causation is an amount of loss issue for the appraisal panel." Nationwide Mut., 774 So.2d at 781.
In Gonzalez v. State Farm, Gonzalez submitted a claim to its insurer for cracks in the walls and tiles of the property. Gonzalez asserted that the damage was attributable to a covered cause, blasting in the area. The carrier, however, denied coverage based on its position that the damage was as a result of an excluded cause, minor settling of the foundation. Gonzalez filed suit against the insurer and demanded an appraisal. The trial court allowed the appraisers and umpire to decide whether the damage to the walls and tiles was as a result of blasting or as a result of minor settling of the foundation. The insurer's appraiser and the umpire determined that the damage was as a result of the settling of the foundation, and awarded Gonzalez zero damages. The trial court confirmed the appraisal award, and entered a final judgment in favor of the insurer. On appeal, this court reversed, finding that "the appraisers impermissibly decided whether the entire claim was within the coverage of the insurance policy." Gonzalez v. State Farm, 805 So.2d at 815.
The Florida Supreme Court resolved the conflict by adopting the following analysis set forth by Judge Cope in Gonzalez v. State Farm:
Very simply, the Licea[2] court was saying that when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount to be paid. In that circumstance, the appraisers are to inspect the property and sort out how much is to be paid on account of a covered peril. In doing so, they are to exclude payment for "a cause not covered, such as normal wear and tear, dry rot, or various other designated, excluded causes."
Thus, in the Licea situation, if the homeowner's insurance policy provides coverage for windstorm damage to the roof, but does not provide coverage for dry rot, the appraisers are to inspect the roof and arrive at a fair value for the windstorm damage, while excluding payment for the repairs required by preexisting dry rot.
In the present case (unlike Licea) State Farm says that there is no coverage for the claim whatsoever, while the homeowners say that the claim falls within an applicable coverage. Whether the claim is covered by the policy is a judicial question, not a question for the appraisers.
Johnson, 828 So.2d at 1025 (footnote added; emphasis in original; citations omitted). Based on this analysis, the Florida Supreme Court held that "causation is a coverage question for the court when an *16 insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is a covered loss, the amount of which is disputed." Johnson, 828 So.2d at 1022.
In the case at hand, the insurance carrier agrees that there is a covered loss, but disagrees as to the amount of loss. Therefore, based on Johnson, although there is a large discrepancy between the insured's and insurance carrier's estimate of the loss, because the insurer has not wholly denied that there is a covered loss, causation is "an amount-of-loss question for the appraisal panel," not a coverage question that can only be decided by the trial court. Accordingly, we agree with the insurance carrier that pursuant to Johnson, it is permissible for an appraisal panel to decide causation issues when causation is not a coverage question, but rather an amount-of-loss question.
While we have resolved the insured's first argument contrary to its position, we, however, reverse based upon the specific facts of this case, which we will now address in discussing the insured's second argument raised on appeal. The insured contends that the umpire exceeded the duties assigned to it and made findings specifically reserved for determination by the trial court. The insured claims, therefore, that the trial court erred in confirming the appraisal award. We agree.
A review of the trial court's order reflects that the trial court imposed limitations on the duties it granted to the umpire. The trial court ordered the umpire to "derive at an amount of the total loss, and shall further breakdown the amount of the loss by virtue of excluded causes." The record on appeal does not indicate that either party objected to this language contained in the trial court's order. Contrary to the trial court's order, the umpire did not do as directed as the umpire's report did not state the total loss or "breakdown the amount of the loss by virtue of excluded causes." While an umpire has the authority to resolve causation issues, since the trial court specifically reserved this issue for the court's determination, the umpire in this case exceeded the authority granted to it by the trial court. The trial court's order additionally and clearly states that "[t]he Court shall be the ultimate finder of fact on the issue of whether the loss, in whole or part, was caused by a covered cause." In contravention of the trial court's order, the umpire did not fulfill the tasks assigned to it and instead made factual findings as to coverage, an issue not in dispute and an issue it lacked authority to resolve; and causation, an issue which pursuant to the trial court's order, the trial court had reserved for itself. Thus, we conclude that trial court erred by confirming the appraisal award.
Accordingly, we reverse the trial court's order affirming the appraisal award, and remand with instructions that the appraisal process proceed before a new umpire.
Reversed and remanded.
NOTES
[1] It is interesting to note that although the insurance carrier's appraisal report indicated that there was coverage under the policy, the insurance carrier's appraiser later agreed with the umpire's award, which provides that "this Umpire has determined that the insured did not carry the burden of proof to establish insurance coverage." (emphasis added).
[2] State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285 (Fla.1996).